IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and | : | Civil Action No. 21-cv-5578 |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, DEPARTMENT OF | : | |
| ENVIRONMENTAL PROTECTION | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| BUCKS COUNTY WATER AND | : | |
| SEWER AUTHORITY, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiffs, the United States of America, by the authority of the Attorney General of the

United States and through the undersigned attorneys, acting at the request and on behalf of the

United States Environmental Protection Agency ("EPA"), and the Commonwealth of

Pennsylvania, Department of Environmental Protection ("Commonwealth," "PADEP", or "the

department") (collectively "Plaintiffs"), allege as follows:

## NATURE OF THE ACTION

1.      This is a civil action for injunctive relief and civil penalties brought against the

Bucks County Water and Sewer Authority ("BCWSA" or "the Authority") pursuant to Sections

309(b) and (d) of the federal Clean Water Act ("CWA"), 33 U.S.C. § 1319(b) and (d), the

Pennsylvania Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S.

§§ 691.1-691.1001 ("Clean Streams Law"), the Pennsylvania Sewage Facilities Act, Act of

January 24, 1966, P.L. 1535, *as amended*, 35 P.S. §§ 750.1-750.20a ("Sewage Facilities Act"),

Section 1917-A of the Administrative Code of 1929, P.L. 177, *as amended*, 71 P.S. § 510-17

("Administrative Code"), and the rules and regulations promulgated thereunder, for the

Authority's illegal discharges of pollutants in violation of Sections 301(a) and 402(a) of the

CWA, 33 U.S.C. §§ 1311(a) and 1342(a) and Sections 3, 201, 202, 401, and 402 the Clean

Streams Law, 35 P.S. §§ 691.3, 691.201, 691.202, 691.401, and 691.402.

<u>**JURISDICTION, VENUE, NOTICE, AND AUTHORITY**</u>

2.      This Court has jurisdiction over the subject matter of this action pursuant to

Sections 301 and 309(b) and (d)) of the CWA, 33 U.S.C. §§ 1301 and 1319(b) and (d), and 28

U.S.C. §§ 1331, 1345, and 1355.

3.      This Court has supplemental jurisdiction over Pennsylvania's state law claims

alleged herein pursuant to 28 U.S.C. § 1367(a) because the state claims are so related to the

federal claims as to form part of the same case or controversy.

4.      Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C.

§§ 1391(b) and 1395(a) and Section 309(b) of the CWA, 33 U.S.C. § 1319(b), because it is the

judicial district where the Authority is located and where the alleged violations occurred.

5.      Notice of the commencement of this action has been provided to the

Commonwealth of Pennsylvania, pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

6.      The Commonwealth has joined in this action in accordance with Section 309(e) of

the CWA, 33 U.S.C. § 1319(e).

7.      Authority to bring this action is vested in the Attorney General of the United

States under Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

8.      PADEP is the state agency that is charged with the duty and the authority to

administer and enforce the Clean Streams Law, Section 1917-A of the Administrative Code, and

the rules and regulations promulgated thereunder, and which has been authorized to administer the National Pollutant Discharge Elimination System ("NPDES") permit program under Section 402 of the Clean Water Act, 33 U.S.C. § 1342.  PADEP is a "state water pollution control agency" and "person" as defined in Section 502(1) and (5) of the Act, 33 U.S.C. § 1362(1) and (5).  The Commonwealth has authority to join in this Complaint, pursuant to Sections 601 and 605 of the Clean Streams Law, 35 P.S. §§ 691.601 and 691.605.

<u>**DEFENDANT**</u>

9.      The Authority is a Pennsylvania Municipal Authority created under the Pennsylvania Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, *as amended*, 53 Pa.C.S. §§ 5601-5623 ("Municipality Authorities Act").

10.      The Authority is a municipal water and sewer authority that provides sewerage services to municipalities in the Eastern District of Pennsylvania.  It is run by a Board of Directors appointed by the Bucks County Commissioners and acts as a separate legal authority from the rest of the Bucks County government.

11.      The Authority exists under the laws of the Commonwealth of Pennsylvania with its office located at 1275 Almshouse Road, Bucks County, Warrington, Pennsylvania 18976.

12.      Defendant is a "person" within the meaning of CWA § 502(5), 33 U.S.C. § 1362(5), and Section 1 of the Clean Streams Law, 35 P.S. § 691.1, and a "municipality" within the meaning of Section 502(4) of the Act, 33 U.S.C. § 1362(4) and Section 1 of the Clean Streams Law, 35 P.S. § 691.1.

## STATUTORY AND REGULATORY BACKGROUND

13.     The CWA is a comprehensive statute designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." Section 101(a) of the CWA, 33 U.S.C. § 1251(a).  To achieve that goal, Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of pollutants" except as in compliance with an NPDES permit issued by the EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

14.     The CWA defines the phrase "discharge of pollutants" to include "any addition of any pollutant to navigable waters from any point source."  Section 502(12) of the CWA, 33 U.S.C. § 1362(12).

15.     "Navigable waters" means "the waters of the United States."  33 U.S.C. § 1362(7).  In turn, "waters of the United States" has been defined to include, *inter alia*: (i) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce; (ii) all interstate waters; and (iii) tributaries to such waters.  *See, e.g.*, 40 C.F.R. §§ 122.2 (1993).

16.     "Pollutant" within the meaning of the CWA includes "solid waste . . . sewage, garbage, sewage sludge . . . biological materials . . . and . . . industrial, municipal, and agricultural waste discharged into water."  Section 502(6) of the CWA, 33 U.S.C.  § 1362(6).

17.     The CWA defines the term "point source" to mean "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . . from which pollutants are or may be discharged."  Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

18.     Section 402(a) of the Act, 33 U.S.C. § 1342(a), provides that the Administrator of the EPA may issue NPDES permits to authorize the discharge of pollutants into waters of the United States, subject to the conditions and limitations set forth in such permits.

19.     Section 402(b) of the Act, 33. U.S.C. § 1342(b), provides that a state may establish its own permit program, and after receiving EPA's authorization of that program, may issue NPDES permits within its jurisdiction.

20.     On or about July 1, 1978, the Administrator of EPA authorized the Commonwealth to issue NPDES permits in Pennsylvania under the CWA, and the Commonwealth, through PADEP, does so in accordance with its Clean Streams Law, 35 P.S. § 691.1 *et seq*.  The Commonwealth's authority to issue such permits, pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b), has been in effect at all times relevant to this Complaint.

21.     EPA retains concurrent enforcement authority pursuant to Section 402(i) of the Act, 33 U.S.C. § 1342(i).

22.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the EPA to commence a civil action for appropriate relief, including a permanent or temporary injunction, when any person violates, among other things, Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation implementing such sections in a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

23.     Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note (Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note (Pub. L. 104-134, Sec. 31001(s)), and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461 note (Pub. L.114-74, Section 701)) as reflected in the Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R.

Part 19, EPA may seek civil penalties of up to $32,500 per day for each violation occurring between April 1, 2008 and January 11, 2009, of up to $37,500 per day for each violation occurring after January 12, 2009 and through November 2, 2015, and up to $54,833 per day where penalties are assessed on or after January 15, 2019, pursuant to CWA section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4; and for civil penalties of up to $10,000 per day for such Clean Streams Law violations, pursuant to Section 605 of the Clean Streams Law, 35 P.S. § 691.605.

24.     As to the Commonwealth, Section 3 of the Clean Streams Law, 35 P.S. § 691.3 provides that it is against public policy and it is a public nuisance to discharge sewage into waters of the Commonwealth, which causes or contributes to pollution or causes a danger of pollution.

25.     Sections 201 and 202 of the Clean Streams Law, 35 P.S. §§ 691.201 and 691.202, prohibit the discharge of sewage by any person or municipality into any waters of the Commonwealth except in compliance with a permit issued under Section 202 of the Clean Streams Law, 35 P.S. § 691.202.

26.     Sections 401 and 402 of the Clean Streams Law, 35 P.S. §§ 691.401 and 691.402, make it unlawful or a nuisance to place anything in a water of the Commonwealth that would constitute pollution or to conduct an activity that is contrary to a regulation or a permit issued by the department that is required by the rules and regulations promulgated under the Clean Streams Law.

27.     Section 92a.2 of the regulations adopted by the Pennsylvania Environmental Quality Board, 25 Pa. Code § 92a.2, defines "discharge" as "an addition of any pollutant to surface waters of this Commonwealth from a point source."

6

28.     Section 92a.2 of the regulations adopted by the Pennsylvania Environmental Quality Board, 25 Pa. Code§ 92a.2, defines "pollutant" as "a contaminant or other alteration of the physical, chemical, biological or radiological integrity of surface water that causes or has the potential to cause pollution as defined in section 1 of the State Act (35 P. S. § 691.1)."

29.     Section 1 of the Clean Streams Law, 35 P.S. § 691.1, states that "sewage" "shall be construed to include any substance that contains any of the waste products or excrementitious or other discharge from the bodies of human beings or animals."

30.     Section 1 of the Clean Streams Law, 35 P.S. § 691.1, states that "[w]aters of the Commonwealth" "shall be construed to include any and all rivers, streams, creeks, rivulets, impoundments, ditches, water courses, storm sewers, lakes, dammed water, ponds, springs and all other bodies or channels of conveyance of surface and underground water, or parts thereof, whether natural or artificial, within or on the boundaries of this Commonwealth."

31.     Section 91.34 of the regulations adopted by the Pennsylvania Environmental Quality Board, 25 Pa. Code § 91.34, require that persons engaged in the impoundment, production, processing, transportation, storage, use, application or disposal of pollutants, including sewage, take necessary measures to prevent those pollutants from directly or indirectly reaching waters of the Commonwealth.

32.     Section 92a.9 of the regulations adopted by the Pennsylvania Environmental Quality Board, 25 Pa. Code § 92a.9, provides that an NPDES permit satisfies the permit requirement of Sections 202 of the Clean Streams Law, 35 P.S. § 691.202.

33.     Section 601 of the Clean Streams Law, 35 P.S. § 691.601, provides in pertinent part:

> Any activity or condition declared by this act to be a nuisance or which is otherwise in violation of this act shall be abatable in the manner provided by law or equity for the abatement of public nuisances.

34.     Section 611 of the Pennsylvania Clean Streams Law, 35 P.S. § 691.611, provides

in pertinent part:

> It shall be unlawful to fail to comply with any rule or regulation of the department or to fail to comply with any order or permit or licenses of the department, to violate any of the provisions of this act or rules and regulations adopted hereunder, or any order or permit or licenses of the department, to cause air or water pollution, or to hinder, obstruct, prevent or interfere with the department or its personnel in the performance of any duty hereunder or to violate the provisions of 18 Pa. C.S. Section 4903 (relating to false swearing) or 4904 (relating to unsworn falsifications to authorities). Any person or municipality engaging in such conduct shall be subject to the provisions of Sections 601, 602, and 605.

35.     Section 605 of the Clean Streams Law, 35 P.S. § 691.605, provides in pertinent

part:

> In addition to proceeding under any other remedy available at law or equity for a violation of provision of this act, rule, regulations, order of the department, or condition of any permit issued pursuant to this act, the department, after hearing, may assess a civil penalty upon a person or municipality for such violation. Such a penalty may be assessed whether or not the violation was willful. The civil penalty so assessed shall not exceed ten thousand dollars ($10,000) per day for each violation.

36.     Section 14 of the Sewage Facilities Act, 35 P.S. § 750.14,  provides, in pertinent

part, that any discharge of untreated or partially treated sewage to the surface of the ground or

into waters of the Commonwealth, except as approved by the Department under Sections 202 or

207 of the Clean Streams Law, 35 P.S. §§ 691.202 or 691.207, or permitted by local agency

under Section 7.3 of the Sewage Facilities Act, 35 P.S. § 750.7c (regarding permitting of

individual residential spray irrigation systems), constitutes a nuisance and shall be abatable.

37.     Section 1917-A of the Administrative Code, 71 P.S. § 510-17, provides, in

pertinent part, that PADEP shall have the power and its duty shall be:

a)  To protect the people of this Commonwealth from unsanitary conditions and
    other nuisances, including any condition which is declared to be a nuisance by
    any law administered by the department;

b)  To cause examination to be made of nuisances, or questions affecting the
    security of life and health, in any locality, and, for that purpose, without fee or
    hindrance, to enter, examine and survey all grounds, vehicles, apartments,
    buildings, and places, within the Commonwealth, and all persons, authorized
    by the department to enter, examine and survey such grounds, vehicles,
    apartments, buildings and places, shall have the powers and authority conferred
    by law upon constables;

c)  To order such nuisances including those detrimental to the public health to be
    abated and removed; [and]

d)  For the purpose of collecting or recovering the expense of the abatement or
    removal of a nuisance, to file a claim, or maintain an action, in such manner as
    may now or hereafter be provided by law, against the owner or occupant of the
    premises upon or from which such nuisance shall have been abated or removed
    by the department.

## GENERAL ALLEGATIONS

38.     At all relevant times, the Authority has owned and/or operated wastewater

treatment plants ("WWTPs") and their associated separate sanitary sewer systems for the

collection and conveyance of the sewage flows for treatment prior to discharge.

39.     The Authority operates several hundred miles of sewer pipes.  It owns and

operates treatment plants and owns portions of and operates wastewater collection and

conveyance systems that are separate sanitary sewer systems and not combined with the storm

water collection systems, and also conveys flows to other WWTPs, and which serve the citizens

of the following:

a.  Richland Service Area includes the following municipalities: Richland Township and Richlandtown Borough.

b.  Upper Dublin Service Area includes the following municipalities: Upper Dublin Township and Springfield Township.

c.  New Hope-Solebury Service Area includes the following municipalities: New Hope Borough and Solebury Township.

d.  Central Bucks Service Area includes the following: Plumstead Township, Doylestown Township, Doylestown Borough, New Britain Borough, New Britain Township, Warrington Township, and portions of Buckingham Township and Bedminster Township.

e.  Neshaminy Service Area includes the following municipalities: Middletown Township, Bensalem Township, and Langhorne Borough.

40.     Some of the foregoing service areas convey flows to WWTPs owned and operated by other authorities who hold NPDES permits.  PADEP has issued BCWSA NPDES Permit Number PA0021181, on or about June 18, 2014, with an expiration date of June 30, 2019; NPDES Permit Number  PA0021172, on or about December 22, 2014, with an expiration date of December 31, 2019; NPDES Permit Number PA0051250, on or about April 15, 2013, with an expiration date of April 30, 2018; and NPDES Permit Number  PA0029441, on or about November 4, 2014, with an expiration date of November 30, 2019 (collectively "NPDES Permits").  The permits can be found here: https://www.dep.pa.gov/Business/Water/CleanWater/Pages/Wastewater-Reports.aspx.

41.     The NPDES Permits have been effective and in substantially the same form since 2008.

42.     The Authority's sanitary sewer systems include gravity sewers, force mains, pump stations, manholes, other real and personal property, and appurtenances, thereto, designed to convey sanitary wastewater (including sewage).

43.     Parts of the BCWSA-owned system conveys wastewater to several wastewater treatment plants that discharge to the Delaware River and several of its tributaries which are waters of the United States and waters of the Commonwealth.

44.     BCWSA's five service areas have historically all suffered from SSOs.  Since 2014, BCWSA service areas have reported SSOs, as detailed in Exhibit 1 attached hereto.  Of those, over 100 have occurred in Plumstead Township.  In that timeframe, multiple SSOs have also occurred in Bensalem, Richland, Doylestown Borough, Middletown, Upper Dublin, and New Hope/Solebury.

45.     On June 17, 2008, BCWSA and PADEP entered into a Consent Order and Agreement ("2008 Consent Order and Agreement") relating to SSO problems in Plumstead Township, which is attached as Exhibit 2 hereto.  As recited in the 2008 Consent Order and Agreement, SSOs had been occurring there since at least 2002.  As part of its obligations set forth in the 2008 Consent Order and Agreement, BCWSA paid to PADEP a civil penalty of $73,000, and agreed to perform certain corrective actions to resolve those specifically identified violations of the Clean Streams Law, which occurred from May 2002 to February 2008.

46.     In the 2008 Consent Order and Agreement, BCWSA agreed to eliminate SSOs in the Plumstead Township sanitary sewer collection system by, among other things, implementing an inflow and infiltration abatement program and by instituting a corrective action plan that PADEP had approved.  *See* Exhibit 2 at 3 ¶ 3.

47.     BCWSA also agreed to pay stipulated civil penalties into the Commonwealth's Clean Water Fund for, among other violations, future SSOs that might occur in areas of Plumstead Township from June 17, 2008 until eighteen months after BCWSA's receipt WQM Permit No. 090408.  *See* Exhibit 2, at 6, ¶ 5.a.2.

48.     Since the 2008 Consent Order and Agreement became effective, SSOs from the BCWSA's sewage system continued to occur in Plumstead Township.

49.     Pursuant to Section 5.a.2 of the 2008 Consent Order and Agreement, *see* Exhibit 2, the provision that required BCWSA to pay stipulated civil penalties for SSOs occurring in Plumstead Township expired on April 2, 2014.

50.     Pursuant to the 2008 Consent Order and Agreement, BCWSA paid $205,000 of stipulated civil penalties into the Commonweath's Clean Water Fund for specific SSOs occurring in Plumstead Township from June 17, 2008, until PADEP notified BCWSA on April 2, 2014, of the conclusion of the stipulated penalty period for SSOs.

51.     PADEP also assessed a civil penalty of $9,797.00, through a separate Consent Assessment of Civil Penalty, entered into between PADEP and BCWSA on October 18, 2017, for an SSO from the Big Oak Interceptor, occurring on March 6, 2017, in Middletown Township.

52.     Despite the requirements of the CWA and the work that BCWSA undertook pursuant to the 2008 Consent Order and Agreement, over 100 SSOs have occurred in Plumstead from BCWSA's sewage systems to waters of the United States and the Commonwealth since January 1, 2014.

53.     Sewage, commercial and industrial wastes, and their constituents, are "pollutants" within the meaning of Section 502(6) of the CWA, 33 U.S.C. § 1362(6) and cause "pollution," as

defined by Section 1 of the Clean Streams Law, 35 P.S. § 690.1, when discharged into waters of the Commonwealth, unless in accordance with a permit.

54.     The pump stations, force mains, manholes, and other points from which the pollutants were discharged constitute "point sources" within the meaning of Section 502(14) of the CWA, Section 33 U.S.C. § 1362(14).

55.     The NPDES Permits issued to BCWSA and listed in Paragraph 40 do not allow for SSOs.  Part B. I. Management Requirements H. Sanitary Sewer Overflows (SSOs) sites:  "An SSO is an overflow of wastewater, or other untreated discharge from a separate sanitary sewer system (which is not a combined sewer system), which results from a flow in excess of the carrying capacity of the system or from some other cause prior to reaching the headworks of the sewage treatment facility.  SSOs are not authorized under this permit.  The permittee shall immediately report any SSO to DEP in accordance with Part A III.C.4 of this permit."

56.     BCWSA's SSOs are a result of multiple causes including, among other things, excessive infiltration and inflow ("I/I") and inadequate flow capacity in its collection system to convey that I/I, as well as other maintenance-related issues.

57.     SSOs typically contain harmful pollutants including microbial pathogens, oxygen-depleting substances, an excessive amount of nutrients such as nitrogen and phosphorous, and toxics.

## COUNT I

### Sanitary Sewer Overflows

58.     Paragraphs 1 through 57 are re-alleged and incorporated herein by reference.

59.     On over 250 different occasions between January 6, 2014 and the present, BCWSA has discharged untreated sewage and other pollutants from point sources within its

collection and conveyance systems, including without limitation manholes, pump stations, and sewer lines.  *See* Exhibit 1.  These SSOs are not permitted or otherwise authorized by Part B.I.H of the NPDES Permits, the CWA, or the Clean Streams Law.

60.     Upon information and belief, BCWSA continues to discharge pollutants containing untreated sewage from its separate sanitary sewer collection systems, especially during periods of wet weather and high flows.

61.     Each day of such discharge constitutes a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a) and of Sections 3, 201, 202, 401, and 402 of the Clean Streams Law, 35 P.S. §§ 691.3, 691.201, 691.202, 691.401, and 691.402, 25 Pa. Code § 91.34; and Section 14 of the Sewage Facilities Act, 35 P.S. § 750.14.

62.     Pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), Sections 601, 605, and 611 of the Clean Streams Law, 35 P.S. §§ 691.601, 691.605, and 691.611, and Section 14 of the Sewage Facilities Act, 35 P.S. § 750.14, BCWSA is liable for permanent injunctive relief and for civil penalties.

63.     BCWSA is liable for civil penalties of up to $32,500 per day for each violation occurring between April 1, 2008 and January 11, 2009, of up to $37,500 per day for each violation occurring after January 12, 2009 and through November 2, 2015, and up to $54,833 per day where penalties are assessed on or after January 15, 2019, pursuant to CWA section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, and for civil penalties of up to $10,000 per day for such Clean Streams Law violations, pursuant to Section 605 of the Clean Streams Law, 35 P.S. § 691.605.

64.     Unless enjoined by an order of the Court, BCWSA will continue to discharge pollutants and/or operate its sewage systems in a manner not authorized by its Permits in

violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and of Sections 3, 201, 202, 401, and 402 of the Clean Streams Law, 35 P.S. §§ 691.3, 691.201, 691.202, 691.401, and 691.402, and Section 14 of the Sewage Facilities Act, 35 P.S. § 750.14, and 25 Pa. Code § 91.34.

## COUNT II

### Failure to Properly Operate and Maintain BCWSA's Sanitary Sewer System

65.     The allegations in the foregoing paragraphs are hereby re-alleged and incorporated herein.

66.     BCWSA's NPDES permits, Water Quality Management permits, the Clean Streams Law, and the regulations promulgated by the department require BCWSA to properly operate and maintain all facilities and systems of treatment and control (and related appurtenances).

67.     BCWSA did not conduct adequate preventative maintenance, including failing to regularly seal and/or line its sewers, perform root control, clean and maintain collection systems, conveyance systems, and manholes.  These failures have contributed to excessive infiltration and inflow of rainwater into the sewer system, a contributing factor to SSOs.  BCWSA has failed to undertake adequate corrective measures to eliminate such SSOs. Additionally, BCWSA has acquired certain of its sewage systems or taken responsibility for operating them but has not adequately characterized the condition of the acquisitions to identify conditions that can cause SSOs.

68.     The history of SSOs in BCWSA's sewage systems, is further evidence of poor operation and maintenance.  Many SSOs were due to blockages, broken pipes, tree root

infiltration, and the accumulation of fats, oil, and grease, all indicative of operation and maintenance practices below industry standards.

69.     BCWSA's history of sanitary sewer backups, *i.e.*, wastewater backups into buildings caused by blockages or other malfunctions in BCWSA's collection system, is likewise indicative of BCWSA's failure to properly operate and maintain its sanitary sewer system in accordance with its permits, the Clean Streams Law, and the regulations promulgated, thereunder.  Such sanitary sewer backups expose residents to viruses, bacteria and other pathogens when they come into contact with raw sewage creating a significant public health risk.

70.     Pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), Sections 601, 605, and 611 of the Clean Streams Law, 35 P.S. §§ 691.601, 691.605, and 691.611, and Section 14 of the Sewage Facilities Act, 35 P.S. § 750.14, BCWSA is liable for permanent injunctive relief and for civil penalties.

71.     BCWSA is liable for civil penalties of up to $32,500 per day for each violation occurring between April 1, 2008 and January 11, 2009, of up to $37,500 per day for each violation occurring after January 12, 2009 and through November 2, 2015, and up to $54,833 per day where penalties are assessed on or after January 15, 2019, pursuant to CWA section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4 (as adjusted over time as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), *as amended* by the Debt Collection Improvement Act of 1996, and most recently, by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note; Pub. L.114-74, Section 701); and for civil penalties of up to $10,000 per day for such Clean Streams Law violations, pursuant to Section 605 of the Clean Streams Law, 35 P.S. § 691.605.

72.     Unless enjoined by an order of the Court, BCWSA will continue to discharge pollutants and/or operate its sewage systems in a manner not authorized by its permits and/or in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and of Sections 3, 201, 202, 401, and 402 of the Clean Streams Law, 35 P.S. §§ 691.3, 691.201, 691.202, 691.401, and 691.402, and Section 14 of the Sewage Facilities Act, 35 P.S. § 750.14, and 25 Pa. Code § 91.34.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs the United States of America and the Commonwealth of Pennsylvania respectfully request that this Court provide the following relief:

1.     A permanent injunction enjoining Defendant BCWSA from any and all ongoing and future violations of the CWA and the Clean Streams Law by ordering compliance with the CWA and the Clean Streams Law;

2.     A permanent injunction directing Defendant BCWSA to take all steps necessary to come into permanent and consistent compliance with the prohibition on unpermitted discharges and/or operate its sewage systems in a manner consistent with its permits and in accordance with Section 301(a) of the CWA and in Sections 3, 201, 202, 401, 402, 601, and 611 of the Clean Streams Law, 35 P.S. §§ 691.3, 691.201, 691.202, 691.401, 691.402, 601.601, and 691.611, and Section 14 of the Sewage Facilities Act, 35 P.S. § 750.14, and 25 Pa. Code § 91.34;

3.     A judgment assessing civil penalties against Defendant BCWSA and in favor of the United States and the Commonwealth of Pennsylvania, of up to $32,500 per day for each violation occurring between April 1, 2008 and January 11, 2009, of up to

$37,500 per day for each violation occurring after January 12, 2009 and through November

2, 2015, and up to $54,833 per day where penalties are assessed on or after January 15,

2019, pursuant to CWA section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4 (as

adjusted over time as required by the Federal Civil Penalties Inflation Adjustment Act of

1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), *as amended* by the Debt Collection

Improvement Act of 1996, and most recently, by the Federal Civil Penalties Inflation

Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note; Pub. L.114-74, Section

701); and for civil penalties of up to $10,000 per day for such Clean Streams Law

violations, pursuant to Section 605 of the Clean Streams Law, 35 P.S. § 691.605;

    4.    Order Defendant BCWSA to mitigate the effects of each of its violations;

    5.    Award the United States and the Commonwealth of Pennsylvania

their costs and disbursements in this action; and

    6.    Grant to the United States and the Commonwealth of Pennsylvania

such other and further relief as this Court deems appropriate.

Dated:  December 22, 2021                  Respectfully submitted,

                                      JENNIFER ARBITTIER WILLIAMS
                                      United States Attorney

                                      /s/Gregory B. David
                                      GREGORY B. DAVID
                                      Assistant United States Attorney
                                      Chief, Civil Division
                                      Eastern District of Pennsylvania
                                      615 Chestnut Street, Suite 1250
                                      Philadelphia, PA 19106-4476
                                      TEL: (215) 861-8200
                                      FAX: (215) 861-8618
                                      *Counsel for the United States*

OF COUNSEL:
Lourdes Bufill
United States Environmental Protection Agency
Office of Compliance and Enforcement Assurance
1200 Pennsylvania Ave., NW
Washington, D.C.  20460

Pamela J. Lazos
Senior Assistant Regional Counsel
United States Environmental Protection Agency
Region III
1650 Arch Street
Philadelphia, PA 19103

/s/William H. Gelles
WILLIAM H. GELLES
Supervisory Counsel
Regional Counsel
Commonwealth of Pennsylvania
Department of Environmental Protection
Southeast Office of Chief Counsel
2 East Main Street
Norristown, PA  19401
484-250-5862